Good morning, and may it please the Court. This Court explained in United States v. Charlie that bad character evidence is, quote, said to weigh too much with the jury, and to so over-persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge, end quote, in a criminal trial. And that's precisely what happened at Mr. Pricop's criminal trial. The District Court erroneously allowed the government to admit bad character evidence in the form of two, or in two forms. The first is evidence about Mr. Pricop's prior criminal conviction out of the Eastern District of Michigan and a prior investigation related to Swift Trucks. And second, by admitting erroneously evidence of 19 out-of-state fires allegedly set by Mr. Pricop, which served no purpose other than to suggest that Mr. Pricop was a bad man who should be convicted. Well, can we start with the first one, because doesn't it go straight to motive? I mean, it just seems like the reason this person may have a motive to set Swift Trucks on fire was because they had investigated him and turned over evidence and secured a conviction against him. Why isn't that just classic motive? Well, generally speaking, Your Honor, motive evidence is generally inadmissible in a criminal case unless motive is an element of the crime or it's relevant to prove a material element of the crime that's been charged. And in this case, motive was neither of those things. So starting with whether motive was evidence, was an element of the crime, for Section 844i, which is the statute Mr. Pricop was charged and convicted under, that crime does require the element of malicious. So it does require a defendant maliciously set a fire. But the term malicious just means that the defendant set the fire intentionally or with a reckless disregard that the destruction of property or a potential risk of injury to the person. So if he had ill will towards Swift, wouldn't that make it more likely that he intentionally started a fire? I suppose it could marginally add to that. The identity of Swift is effectively irrelevant for the statute. So it's not like the hate crime statute, for example, which requires a specific race-based motive to pursue violent criminal conduct towards another person. I suppose it's marginally, there's arguably some marginal relevance to that. But even if the court accepts that as a permissible reason for the admission of that evidence under Rule 404B, it still has to kind of weigh the unfair, the potential for unfair prejudice with that evidence versus its probative value. And I think in the circumstances of this case, the unfair prejudice far exceeded the probative value of that evidence because at the end of the day, the government could have focused and cabined its case on the way the fires were set to prove that they were set intentionally rather than accidental. And there was evidence in the record. Yeah, but, I mean, so if you're just a regular person, you know, and you're in a jury, and you're told this one company got a bunch of their trailers set on fire, and they happened all over the country, and this person happened to be, who was a truck driver, I think, so you know, in theory you say, well I just happened to be driving all over the country myself as a truck driver. But he happened to be in those locations. That's your evidence you've got. Doesn't your mind just want, you're just like thinking, I need one more piece, like why? Why would this guy have done that? And then since, you know, if you say, oh, by the way, they also like secured a conviction for him for having robbed their trucks earlier, it just, you know, just fills in that part. It seems pretty, pretty important, right? And so, because it seems like your argument is really, you kind of started by saying it's not relevant. I think you're kind of conceding, well, maybe it's a little bit relevant. I'm pushing back a little bit, saying I think it's a little more than a little bit relevant. But it's pretty important, right? I mean, if you're a regular person, that immediately clicks, and you're like, okay, this all makes sense. Absolutely. I agree with your honors characterization that a jury could find it important, could find it compelling. But that's actually... And not, and not, and you're about to say, because they're bad, because it makes them a bad person. But I mean, yeah, they could. They could. But they would also find, I'm making the point that they could find it important as to, like, why it makes sense that he's the one that did this, right? The identity of, so, I mean, why is that not true? I think you're about to tell me that, well, they would find it important, but for a wrong reason. But identity is not a wrong reason, right? Identity is not a wrong reason. Well, identity and motive are two separate things, your honor. And so, to your... Well, not exactly, because you say, why is it that this one person would have done all these? And you say, well, because... So identity and motive are kind of tied together. This one person is the person who they got a conviction for. So I'm not sure that, at least in this case, they're independent of each other. Well, so there's a lot to unpack there. Let me try to take them one by one, your honor. So I agree that, so I started by saying as a general matter, identity and motive are somewhat separate issues. Though I agree with your honor that in the context of this case, they're probably a little more linked together. I, you were right to correct, to anticipate that I was going to counter your question by proposing that this is actually part of the reason why these sort of, I'm using the phrase character evidence or bad character evidence, why it's, there's caution is raised when this evidence comes in. It's because it is, in fact, very compelling. So I think the fact that a juror would sit and think, yeah, that makes sense to me, suggests what we're really trying to avoid is having it make sense due to some impermissible character evidence. We want to avoid that, but I'm just not sure, the problem, so what you have to do is you have to weigh, the district court judge had to weigh, but how, if it doesn't really do much for sort of completing the puzzle of why it is this guy would have done these things, then yeah, then you say that prejudice outweighs, but what I was specifically getting at is why is it not true that for an average person, for figuring out that this guy was convicted for having set a bunch of Smith trucks on fire, when you add that to he was there and it's all Swift trucks, it just seems to like the whole puzzle clicks and not for a bad reason. It could also be for a bad reason, but for a good reason, which is, okay, that makes sense why this guy would be setting Swift trucks on fire. So your honor said a second ago that it could be for a good reason, it could potentially maybe even a little part of it be for a bad reason, and I think that's the problem. Well, but that's always going to be the case, and it seems to me that the rules are set up. I mean, the district court has to balance it. I mean, it's like you're looking at a puzzle and you're trying to take some pieces of the puzzle off the board and then ask the jury to still figure it out, and the prosecution is like, wait, this puzzle makes clear, and you're like, oh, I can't use the puzzle piece because it would be too prejudicial. That balancing happens, and the district court looks at it and says, that's highly probative. Yes, it's also potentially prejudicial. You seem to be, I mean, if you were saying this isn't relevant at all, you'd have obviously a better argument, but I think that's the debate that we're having here is on a scale of one to ten, this is more like a seven, eight, or nine, not a one, two, or three, and once you get to that, so let me come back. What's your best case? I mean, obviously we have cases that say it's abuse of discretion and you can't say it's prejudicial, or you can't admit prejudicial evidence that has no probative value. What's your best case for something that is very relevant, has been rejected because it's so prejudicial? So, Your Honor, I think the best case I could think of is, there's a case from 1992 of this court, United States versus Daly, which is cited in our briefs, and it's a case where a defendant had engaged in basically a shootout with police officers, he was then arrested, and he was prosecuted for being a felon in possession of a firearm, and in that case, the district court allowed, so this is a case allowing this kind of evidence, and I'll finish this example and give you a case where evidence was excluded. This is allowing the evidence? Correct. Okay. An example where this kind of evidence would be allowed, and in that case they said, well, the evidence of the shootout is necessary to provide context to how this defendant was approached by police and found to possess a firearm, and was then being prosecuted for being a felon in possession of a firearm. In contrast, in another case that I think shows the exclusion of this kind of evidence is Vizcarra-Martinez, which is a 1995 case, also cited in our briefs. In that case, this court found that evidence of a defendant's personal use, possession of personal use quantities of drugs, it was methamphetamine, should have been excluded in a case where he was being prosecuted for possessing precursor chemicals used in the So Daley said, look, these are so linked together, it's got to come in. Vizcarra-Martinez said, these really have nothing to do with each other. Both of those seem right. I mean, so it's something about a probabilistic determination, I think, like how likely is it that somebody who possesses individual use quantities of methamphetamine would also have precursors for cooking methamphetamine. Those don't seem all that correlated, but here we've got somebody who was convicted of misconduct with regard to Swift, and now, all of a sudden, Swift trucks are getting started. It just seems more closely linked. Yeah. In fact, let me add to that. In some ways, of your two examples, my intuition is that this one is further than your example that you said was fine, because this is more like where if somebody had previously shot at somebody, right, and didn't get them, and then the question, I think, would be whether the police had probable cause to stop this person they knew had previously shot at somebody, and you're like, well, yeah, they do, because they know that this person had previously shot, and this person's back speaking at a second place or something. You would say, well, that's prejudicial to say that they previously shot at somebody. Yeah, it is, I suppose, because a jury might drop that they're a bad person, but it's also very probative as to why it would be, why this person was, and that seems very akin to this. He previously robbed the Swift trailers. Well, again, Your Honor, I think that the key is there has to be a balance. It's not so much that anything that is probative comes in. We agree with you, but where did the district court not do that, and how does this, I'm just- Share balance, or like not an abusive balance, right? Well, our position is that the balance here was not met, and that ultimately, too much of the trial was, became a trial both about the prior conduct as well as the out-of-state fires. I had wanted to save some time for rebuttal, so I think I'll leave it at that, Your Honor, and I'll- Okay, thank you. This is what the government says. Thank you. Morning. May it please the court. John Bala for the United States. The two elements that were at issue in this trial were intent and identity. Were these fires maliciously set, and was defendant the one who set them? Or, as defendant argued, was defendant's presence at the scene of six suspicious fires involving Swift trailers just a coincidence? Evidence that defendant wasn't just at the scene of six Swift trailer fires in Southern California, but at 24 across the country, and evidence that defendant had a strong reason to hate Swift based on his prior conviction was both relevant to and strongly probative on those trial issues. Can you address the motive? Their argument is, well, you put this all in under motive, and motive is- I don't think motive is per se excluded, but can you address how motive plays into this? If it were just motive, would we have a different case, or the fact that motive is tied to identity makes this different? I think that motive does have to be relevant to a trial issue, but I think that it's actually the rare case where motive is not relevant, because of course, if somebody has a reason to do a particular act with which they're charged, it makes it more likely that they did that act. In the case that defendant relies on from this court called Brown, that case was a case where this court said that, well, the evidence that was offered, the prior acts, was not actually motive evidence in the first place, but also motive has to be relevant, and motive wasn't relevant in that case, because the defendant acknowledged that he did the act that he was charged with, he just disputed whether he had the requisite intent, and the particular evidence in that case didn't go to the intent. But this court did say that motive is often relevant to show that the charged act was committed, and to show the identity of the actor. That wasn't relevant- So that was a case where the person admitted the conduct? Correct. And that was not- So you're saying in a case where someone doesn't admit the conduct, motive would be a relevant reason to admit the evidence?  In a case where we have to prove that the act was committed, and the identity of the actor, motive for him to have committed the act is relevant, and it's highly probative. Because of course, again, if somebody has a reason to do something, it makes it more likely that they did that thing. But we already have a case law that makes that point, that, I mean, basically the same point here, which is where motive is tied to identity, it can be admitted. Correct. Yes. And, you know, we rely on, again, this court's decision in Bowman too, where that was a case involving an incident where a defendant previously was convicted of assaulting his wife's relative, and then the evidence showed that he blamed his wife for that conviction. And so in a later assault prosecution for assaulting his wife, this court said that yes, that prior conviction was relevant to show his motive to assault the wife, because he blamed her for that conviction. That's an exact parallel- So how likely, in your mind, how likely does it have to be, like, what evidence do you need that he committed the other 19 fires? You don't have to prove beyond a reasonable doubt, though, because you're not trying to secure a conviction on him, right? Correct. So is it like preponderance, or how likely does it need to be that he was the one who did the other 19 fires before it comes in? I'm sorry, I think we're shifting, so I guess we're shifting from motive to the other fires. Right, right, yes. Yes, so the standard of evidence that applies is the standard in Huddleston in Rule 104b of the Federal Rules of Evidence. In order for those other fires to be admissible, we have to provide sufficient evidence for any reasonable fact finder to conclude that he committed those other fires. These other fires were, again, they were only relevant if he, in fact, set them, and we, you know, only need to meet a very low threshold in order to introduce them. Any evidence such that a reasonable fact finder could conclude by- And can you bootstrap the motive evidence from the conviction, prior conviction, to be your sufficient evidence that he did the other fires to? We could, that could certainly play into it, but then on top of that, we also had the location evidence. I mean, the location evidence was really, you know, the strongest evidence combined with the motive. And of course, this all ties together. It wasn't just- Is it relevant? My understanding is he was actually convicted for some of those other fires in other cases, so there would be, it seems to me there might be inconsistent for a court to say it wasn't sufficient evidence for a reasonable juror to conclude when a reasonable juror found beyond a reasonable doubt that he set those other fires in other cases, right? So he was convicted in the Arizona case, so he was charged in this case with the six fires he set in the Central District of California. He was charged with three of the fires he set in the District of Arizona, and he was charged with nine fires that he set in the District of New Mexico. We went first, and so in our trial in this case, he had not yet been convicted, but he was, in fact- No, that's not, you know, I knew that he hadn't at the time, but he has subsequently been convicted, so there seems like there would be some tension for a court to conclude that there was, that a reasonable juror could not reach the conclusion that he had set those fires when, in fact, we know that later on, at least in some of these cases, jurors did conclude he set the fires beyond a reasonable doubt, right? Right, as far as the three Arizona fires, he was just a couple months ago convicted of those fires. Well, and more to the, had he been indicted already, even if he hadn't been convicted in those other cases? Yes, Your Honor. So then the grand jury found probable cause to believe that he had committed those fires? Yes, yes. So, I guess if we're shifting to the evidence of the introduction of the 18 uncharged fires, released uncharged in this case, you know, that evidence didn't violate Rule 404, first because it was intrinsic to the charged fires in this case, and second because it wasn't offered for the character purposes that Rule 404 prohibits. Instead, it was offered for the permissible purposes that this court identified in Miller v. Baldwin. A string of improbable events is unlikely to be the result of chance. You know, these fires were rare. I mean, the jury heard from Swift's security director, who had worked in their security department for more than 20 years, and he said, I've never seen anything like this. We do see truck fires, but that happens in moving trucks when their brakes catch fire. It doesn't happen in trucks that have been stopped for more than two hours. Nothing like this has ever happened. I called my security colleagues at other trucking companies. They weren't experiencing anything like this. And furthermore, after a defendant was arrested in this case, they stopped happening. And Swift never saw any more of these fires again. So these fires were rare. And evidence that the defendant was at 24 of them across the country is evidence that his presence wasn't just a coincidence. It's evidence that he set them. Can I ask you about one more thing? There was also some theft evidence, if I remember, that was admitted, and that, I don't know whether it was error or not, but it does seem to fall under a different, I mean that seems to be a little more akin to the Viscar case that, you know, that counsel was advocating here. So could you address the theft? I understand why fires and location and all that, but when it's just theft, help me understand what evidence was admitted as to theft and why that would not be a violation of this rule. So the theft was related to the prior investigation that Swift conducted. So the prior incident that gave him the motive to burn Swift trailers in this case was the fact that he had been stealing from trailers across the Southwest for years. See, that seems to go more to actual motive and less to identity of the, you know, starting the fires. I mean, it's not intuitive that because you're stealing from someone, you're also going to, you know, light the trailers on fire. No, true enough. But it wasn't just the fact that he was stealing from them. It was the fact that they investigated him, they gave their evidence to law enforcement, and then he was ultimately convicted in federal court for stealing from them. That's what gave him the motive. Of course, he, I'm sure at the time, didn't care that he was stealing from Swift trailers versus any other trailers, but it's the fact that they were the one who caught him, that he knew that they were the one who caught them, and that he served two years in jail. And you would agree that that's less probative than the actual prior arsons? I mean, we'd have to do a different analysis is what I'm saying. Like, if the prior arsons were probative, you know, say they were 7, 8, 9 on a scale of, you know, 1 to 10, the fact that he had previously stolen from them is more, I mean, I don't know where you put it, 2, 3, something like that, but it's a different analysis, right? I mean, I don't think so. I think that the fact that he stole from them, that was inextricably linked to the motive evidence because that's what led to his conviction that gave him the motive to set these fires. You know, these prior arsons, I mean, these prior arsons were all a part of this same string of fires that he set after he got out of jail, serving time for the fact that he stole from Swift trailers. And so, I think that the fact that he stole from them, I mean, that was needed to put the prior conviction into context. We had to show why that prior conviction had something to do with Swift, and we only did it through a single witness. I mean, we had one witness. What if he'd been convicted of stalking, you know, one of the executives at Swift? Would that be relevant and admissible? If the current prosecution were for stalking? Yeah, no, no, no, no, no, no. What if there were just evidence that he had previously been convicted of stalking one of the executives? Would you have tried to admit that as motive? I think that that would have been relevant motive evidence. I mean, what if it's not? That's the slippery slope we have here. I mean, what if there was evidence that he'd had, he felt like he was cheated in a personal transaction with one of the executives? Would that have been admitted? I think so. I mean, again, the probative value might vary, but it would certainly be relevant to motive, which would mean it was outside of Rule 404's prohibition. But I think here, it's, again, it is not just the fact that he previously targeted Swift, and I think that's the crucial distinction that makes this even more probative and certainly admissible and highly relevant at trial. It was the fact that it wasn't just that he previously targeted Swift, but that they caught him, and that they were the ones who put him in jail. So I guess I want to move on and briefly talk about the other two issues, if the Court has no further questions.  Yes, the sentencing and the authentication of the location records for the GPS device. So as far as the authentication record, authentication of the records for the GPS device, the District even though we admittedly had an insufficient Rule 902 certificate, because the other evidence at trial, I think, unequivocally authenticated that evidence under Rule 901. Now, keep in mind that the rule for authenticating evidence under Rule 901 is extremely low. Again, it's just that conditional relevance standard. The party offering an exhibit need only offer evidence sufficient for a reasonable factfinder to conclude by a preponderance of the evidence that this item of evidence is what we're saying it is. And in this context, that means that we had to show that this location data is indeed for the GPS device that we claimed it was. Now, the jury had the testimony from the case agent who testified about how he got the unique device identifiers for this device from tower dump orders. He had the testimony, we had the testimony from the case agent who said that he served AT&T with a court order to get location data for that device, got the records, and he gave them to Agent Sonnendecker, the cell site expert. Then we had the testimony from Agent Sonnendecker, who's had immense experience with cell site location information, who has reviewed thousands of sets of these records, and he looked at these records and he said, yep, these look like these records should look. They also had all the corroborating evidence from the cell phone location data on his cell phone that he didn't dispute, showing that his location often matched up with that of the GPS device. And again, there's numerous other pieces of evidence identified in the government's brief corroborating that these records were indeed for that device, I think the most important of which was that when the case agent ultimately searched defendant's truck and seized the device and then turned the device off, the real-time location data that he got as a part of that same court order stopped. This was unequivocally the correct device. The jury had more than sufficient evidence to conclude by a preponderance of the evidence that that data was for the correct device. Now, as far as sentencing, defendant hasn't shown any error in assigning a criminal history point for his prior theft conviction. He didn't object below, and in his opening brief, he raises an argument that's about an entirely irrelevant statute. He made a mistake about which state's theft statute he was convicted of, and his argument in his opening brief just talks about Ohio law, when in fact he was convicted of theft under Illinois law. The framework that this issue implicates, as set out in Lopez-Pastrana, requires a defendant to compare the elements and the penalties of his previous conviction and compare it to the elements and penalties for the same state's statute for passing a bad check. Defendant compared Ohio theft to Ohio passing a bad check. That's irrelevant. He was convicted of Illinois theft, and even as of his reply brief, he has not identified the elements of Illinois theft. He has not identified what Illinois statute is for passing a bad check, let alone identified its elements or its penalties. He did not object below. He raised an entirely irrelevant argument in his opening brief, and so we think that he has not demonstrated error, let alone plain error, and that he's waived any argument about Illinois law by not raising it in his brief. Unless the panel has any further questions, I'm happy to return the rest of my time to the court. Thank you. Thank you. So, defendant hasn't shown any error in admitting evidence in the trial. He hasn't shown any error in his sentence. This court should affirm his conviction and sentence. I'll start by talking about the government's use of what they call in their brief the doctrine of chances, the idea that a series of independent events taken together are unlikely to be coincidental The case that the government relies on in their brief is an unpublished Ninth Circuit case called Miller, but even in that case, the court said that you cannot use a quote character-based inference end quote to reach the conclusion that the criminal act was intentional to trigger this doctrine. And our position is that the government is triggering that doctrine by the use of character-based inferences that are geared around the prior investigation and conviction as well as the out-of-state part. I mean, the problem is you're right, that's an aspect to it, but that doesn't get you across the finish line. You have to say that it was abuse of discretion because the character evidence was so high that the probative value is outweighed, and I just don't know how you get there when the probative value here is high. Now, the theft, I mean, you could address the theft, I'm a little more, you know, the theft evidence, I'm a little more in your camp on, but I don't think that gets you all the way in this case. Well, let me, I agree with the court about the theft component of it. There is another component that, again, raised in the briefs, that in terms of the balance that the court has to strike or the district court had to strike, even if some evidence of the prior history with Swift was relevant, the way the evidence came in in this case was highly prejudicial. I'll give you a couple examples. The first is the fact that the government was able to admit the fact that Mr. Precop served a two-year prison sentence, which says really nothing about Swift. A second fact is... Well, wait, I mean, wouldn't it suggest why he's grumpy with Swift? I mean, the longer the sentence... I don't know, I'm not sure I agree with you on that. It seems like if you've gone to prison, that's yet another reason to be grumpy with Swift. Well, it could have been that he went to prison without getting into the fact of two years, which suggests more than a minor theft offense. There's also evidence that the government put in at the time of the search back in 2015 connected to the prior conviction. They were able to elicit evidence that law enforcement seized firearm, drugs, luxury items from the house. And certainly that is irrelevant as to Swift. And my time is up, Your Honor, and I can just sum up real quickly. Our position is that the character-based evidence was too strong, it should have been excluded. One final, very quick point on the sentencing issue. The factual mistake made in the opening brief was because there was a factual mistake made in the PSR. And this court has the power to correct the factual mistake by remanding to the district court for a new sentencing hearing for the district court to consider in the first instance whether the prior theft offense should have scored. And the government's never said that it shouldn't, correct? Without Your Honor's submission. Thank you. Thank you. Thank you to both counsel for your excellent argument. The case is now submitted.
judges: NELSON, VANDYKE, Cole